**United States District Court**
For the Northern District of California

1

2

3

4

5                          IN THE UNITED STATES DISTRICT COURT

6                       FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8    KEN SMITH,                                    No. C-06-00254 EDL

9              Plaintiff,                          **ORDER GRANTING PLAINTIFF'S**
                                                   **MOTION FOR REMAND TO STATE**
10      v.                                         **COURT AND DENYING PLAINTIFF'S**
                                                   **MOTION FOR ATTORNEYS' FEES**
11   HEARST COMMUNICATIONS, INC.,

12             Defendant.

13   _____/

14   **I.      INTRODUCTION**

15          Defendant Hearst Communications, Inc. removed this case on the ground that Plaintiff Ken

16   Smith's claims were completely preempted by section 301 of the National Labor Relations Act

17   ("Section 301"). 29 U.S.C. § 185(a). However, because Smith's claims are grounded in non-

18   waivable rights arising under the California Labor Code, they are not preempted.

19   **II.     FACTUAL BACKGROUND**

20          Smith was an account executive at SFGate, a subsidiary of Hearst Communications, Inc. See

21   Notice of Removal, Ex. C (Memorandum of Understanding ("MOU")) at 1. As an account

22   executive, he solicited new advertising business for SFGate. Id. at 7. His position was covered by

23   the Collective Bargaining Agreement ("CBA") negotiated between his union and Hearst. Id. at 1, 4,

24   7. When Smith decided to relocate to Arizona in May 2004, he allegedly negotiated a separation

25   agreement whereby Hearst agreed to pay him commissions on all business that Smith booked

26   through his last day of work as long as those advertisements ran within three months of his

27   departure. Smith's manager allegedly assured him that he would receive this three month "tail" both

28   verbally and in writing. Smith continued to make sales until his last day of work. Without the tail,

United States District Court

For the Northern District of California

1   Smith would have had no incentive to keep working, because he was working on a commission-only

2   compensation basis.

3        After Smith resigned, Hearst refused to pay tails on Smith's two biggest accounts,

4   Google, Inc. and Intercept Interactive (the "Disputed Accounts").  After his union and the NLRB

5   declined to pursue his grievances, Smith sued his former employer in Superior Court.  Smith's

6   complaint alleged only violations of California Labor Code section 200 *et seq.*, specifically sections

7   202 (wages payable upon resignation), 203 (waiting time penalties), 218.5 (attorneys' fees and

8   costs), 218.6 (interest), and of California Business & Professions Code section 17200, *et seq.* (unfair

9   competition).  Hearst removed the case on the basis that Smith's state-law claims were preempted by

10  Section 301 of the National Labor Relations Act because they all arose out of the CBA.  Smith then

11  filed a motion to remand and for attorneys' fees.

12  **III.    DISCUSSION**

13        A.    Removal Jurisdiction and the Complete Preemption Doctrine.

14        Where a civil action over which the federal courts have original jurisdiction is brought in

15  state court, the defendant may remove the action to federal district court.  See 28 U.S.C. § 1441.  A

16  case may be removed pursuant to 28 U.S.C. section 1441 only where a federal question appears on

17  the face of the properly pleaded complaint.  See Caterpillar Inc. v. Williams, 482 U.S. 386, 392

18  (1987).  The Ninth Circuit has consistently held that 28 U.S.C. section 1441 is to be strictly

19  construed against removal jurisdiction, and that "[f]ederal jurisdiction must be rejected if there is

20  any doubt as to the right of removal in the first instance."  Gaus v. Miles, Inc., 980 F.2d 564, 566

21  (9th Cir. 1992) (citing Libhart v. Santa Monical Dairy Co., 592 F.2d 1062, 1064 (9th Cir. 1979)).

22  On its face, the complaint, which asserts state law claims only, does not provide any ground for

23  removal.  Hearst argues, however, that the claims are artfully pled and are in fact claims for breach

24  of the CBA, triggering preemption by Section 301 of the National Labor Relations Act.  Section 301

25  provides that "[s]uits for violation of contracts between an employer and a labor organization

26  representing employees in an industry affecting commerce . . . may be brought in any district court

27  of the United States having jurisdiction of the parties, without respect to the amount in controversy

28  or without regard to the citizenship of the parties."  29 U.S.C. § 185(a).  Accordingly, the only

ground for federal jurisdiction arises out of Hearst's construction of Smith's claims, and its anticipated defenses.

Normally, a defendant may not rely on an affirmative defense to establish preemption and removal jurisdiction. See Caterpillar, 482 U.S. at 393 ("[I]t is now settled law that a case may *not* be removed to federal court on the basis of a federal defense, including the defense of preemption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." (citing Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for So. Cal., 463 U.S. 1, 12 (1983))); see also Merrell Dow Pharms., Inc. v. Thompson, 478 U.S. 804, 809, n.6 (1986) ("Jurisdiction may not be sustained on a theory that the plaintiff has not advanced."). Nevertheless, in the area of labor relations and collective bargaining, "the preemptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" Caterpillar, 482 U.S. at 393 (quoting Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 65 (1987)); see also Olguin v. Inspiration Consol. Copper Co., 740 F.2d 1468, 1472-73 (9th Cir. 1984) (courts must look behind artful pleading and ascertain whether state claim is really a Section 301 claim in disguise). This "complete preemption" doctrine "is applied primarily in cases raising claims preempted by § 301" of the Labor Management Relations Act. Caterpillar, 482 U.S. at 393. Where the heart of a state-law complaint is a violation of a CBA, that complaint arises under federal law, whether or not the plaintiff has mentioned the CBA. Id. at 394 ("'[T]he preemptive force of § 301 is so powerful as to displace entirely any state cause of action 'for violation of contracts between an employer and a labor organization.' Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of § 301.'" (quoting Franchise Tax Bd., 463 U.S. at 23))). Preemption also applies if the state claims are "'substantially dependent on analysis'" of the CBA. Caterpillar, 482 U.S. at 394 (quoting Int'l Bhd. of Elec. Workers v. Hechler, 481 U.S. 851, 859, n.3 (1987)).

By contrast, state law claims that are independent from the CBA or that only require a court to refer to or consult a CBA are not preempted. See Caterpillar, 482 U.S. at 399 ("But a *defendant* cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1    claim, transform the action into one arising under federal law, thereby selecting the forum in which

2    the claim shall be litigated. . . .  Congress has long since decided that federal defenses do not provide

3    a basis for removal."); Livadas v. Bradshaw, 512 U.S. 107, 124-25 (1994) ("simple need to refer" to

4    a CBA does not trigger Section 301 preemption); Lingle v. Norge Div. of Magic Chef, 486 U.S. 399,

5    410-13 (1998) (CBA can provide helpful terms in state law action without triggering preemption).

6         B.  Smith's Claims Are Not Completely Preempted by Section 301 of the NLRA.

7         Hearst mistakenly argues that Smith's claims are arise from the CBA, or at least would

8    require a state court to analyze the CBA and as such are completely preempted.

9           1.    Smith's Claims Are Based on Non-Negotiable State Rights,
                not on Contract Law.

10        The Ninth Circuit has made clear that the rights Smith invokes under the Labor Code are

11   "non-negotiable" and could not have been bargained away by Smith's union.  See Valles v. Ivy Hill

12   Corp., 410 F.3d 1071, 1076, 1082 (9th Cir. 2005) (holding that employees' California state law

13   claim regarding unlawful meal period policy of their employer was not preempted because

14   employees had based their claim on California state law, "without any reference to expectations or

15   duties created by their" CBA); see also Ramirez v. Fox Television Station, Inc., 998 F.2d 743, 748

16   (9th Cir. 1993) ("[C]auses of action which assert 'nonnegotiable state-law rights . . . independent of

17   any right established by contract'" are not preempted by Section 301.); Balcorta v. Twentieth

18   Century-Fox Film Corp., 208 F.3d 1102, 1111 n.3 (9th Cir. 2000) (Section "301 does not permit

19   parties to waive, in a [CBA], nonnegotiable state rights.").  Because Smith pled only claims under

20   state statutes governing basic workplace rights rather than a claim for breach of an employment

21   contract, this case differs from both Young v. Anthony's Fish Grottos, Inc., 830 F.2d 993 (9th Cir.

22   1987), and Olguin, 740 F.2d 1468.  In Young, the court held that the plaintiff's claim for breach of

23   contract based on an oral promise by her employer to discharge her only for cause was preempted by

24   Section 301 because the plaintiff's position was covered by a CBA (which allowed the employer to

25   discharge probationary employees like plaintiff without cause).  See Young, 830 F.2d at 996.  In

26   Olguin, 740 F.2d at 1474, the court similarly held that an employee's claim for breach of contract

27   based on a personnel policy manual requiring the use of "progressive discipline" before termination

28   of an employee was preempted because a CBA existed between the employee's union and his

United States District Court

For the Northern District of California

1   employer.  By contrast, Smith did not file a breach of contract claim, but instead sought to vindicate

2   rights protected by the California Labor Code.[1]

3          Hearst argues that Smith's claims nonetheless are preempted because Labor Code section

4   203 only applies to situations where an employer *wilfully* fails to pay wages owed, and that whether

5   or not Hearst's decision not to pay was willful can be determined only by reference to the CBA.  See

6   Opp'n at 11.  As explained below, resolving this issue will not require the type of analysis that is

7   prohibited by Section 301.  At the hearing, Hearst also argued that the uncertainty of what amount

8   was owed to Smith distinguished Balcorta, 208 F.3d 1102 and Ramirez, 998 F.2d 743.  However,

9   Hearst did not provide any authority for the proposition that the California Legislature intended to

10  limit "non-negotiable" rights to those situations where the amount of the payment owed was already

11  determined.  Smith did not allege a breach of contract, and Hearst cannot invoke federal jurisdiction

12  by redrafting the claims that Smith has pleaded.

13                 2.  Smith's Claims Do Not Require a State Court to Interpret the CBA.

14         The CBA and the MOU governed the terms of Smith's employment.  See Notice of

15  Removal, Exs. B (CBA)-C (MOU).  Section 4 of the MOU specifically allowed Hearst to have a

16  percentage of its sales staff on a commission-only compensation basis, exempted such employees

17

18         [1] Hearst emphasizes that Smith, in complaining to the NLRB, made a sworn statement that his
19  employer "in violation of the [CBA]" failed to pay his commissions.  See Notice of Removal, Ex. D.
    According to Hearst, this statement constitutes a binding admission by Smith that his claims arise under
    the CBA and contradicts the declaration that he filed in support of his motion to remand. See Opp'n at
20  5-6.  This argument is not persuasive.  First, Smith states that he made the earlier declaration based on
    the NLRB's instructions and that he, as a non-lawyer, was not qualified to determine what rights had
21  been violated or what those rights arose under. See Smith Decl. ¶¶ 2-4.  Second, the original declaration
    did not state that his claim for commissions arose *solely* under the CBA.  Third, the case upon which
22  Hearst relies, Cleveland v. Policy Management Systems Corp., 526 U.S. 795 (1999), is inapposite.
    There, the plaintiff had previously filed a declaration stating that she was unable to work in support of
23  her application for Social Security Disability Income benefits.  She then sued her employer for disability
    discrimination.  The employer moved for summary judgment, arguing that the plaintiff could not meet
24  one of the elements of her case since she had sworn that she was unable to work.  The plaintiff failed
    to explain the discrepancy between her earlier statement and her position opposing summary judgment.
25  The court held that: "When faced with a plaintiff's previous sworn statement asserting 'total disability'
    or the like, the court should require an explanation of any apparent inconsistency with the necessary
26  elements of an [Americans with Disabilities Act] claim. To defeat summary judgment, that explanation
    must be sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the
27  plaintiff's good faith belief in, the earlier statement, the plaintiff could nonetheless 'perform the essential
    functions' of her job, with or without 'reasonable accommodation.'" Id. at 807.  Smith's earlier
28  declaration does not rise to the same level of definitiveness as the declaration in Cleveland, and he has
    provided a sufficient explanation for the discrepancy.

United States District Court

For the Northern District of California

1    from Article XX of the CBA, and specified that the employer "shall determine the commission

2    structure" for SFGate commissions-only employees like Smith  Id., Ex. C § 4 ¶ 9.  By amendment,

3    the MOU clarified that:

4      Commission sales employees shall be permitted to solicit only new
  advertising business; defined as . . . advertising accounts which have not been active
5      in the Chronicle for 13 months and . . . advertising accounts which have run other
  paid advertising in print or direct mail in our market and have not been active in the
6      Chronicle for 6 months. . . .  Once a new account becomes regular, it shall be turned
  over to a member of the salaried sales staff who shall continue to service the account.
7      A new account becomes "regular" after it has placed advertisements in each of 12
  consecutive months within a 14 month period. . . .  The Employer shall determine the
8      commission structure.

9    Id., Am. at 7.  The MOU accordingly provides readily calculable, time-based definitions of "new"

10   accounts for which account executives are entitled to commissions, and of "regular" accounts for

11   which they are not.

12     Because the CBA gave it the right to set the commission structure, including percentage and

13   qualifying accounts, Hearst argues that Smith's claims under the Labor Code for unpaid

14   commissions will require a court to analyze terms of the CBA in a manner prohibited by Section

15   301.  See Caterpillar, 482 U.S. at 394; see also Young, 830 F.2d at 997.  Unlike the collateral

16   agreements at issue in Young and Olguin, however, Smith's alleged collateral agreement only

17   supplements terms that are entirely missing from the CBA.  See MOU; see also March 14, 2006

18   Declaration of Linda Frediani ("Frediani Decl.") ¶ 3 ("[C]ommissioned-only salespeople like Mr.

19   Smith worked under commission arrangements that were established between them and the company

20   outside the CBA.  Typically, the Guild was not involved in setting these commission agreements and

21   this was true in Mr. Smith's case, as well.  To my knowledge, nothing in the CBA in 2004 prevented

22   the Company from negotiating a separate agreement for commissions of the type Mr. Smith told me

23   about.  Indeed, there had to be separate agreements between the company and its salespeople

24   because no commission plans were included in the CBA.").[2]  The complaint therefore only

25   implicates the CBA to the extent that Hearst will defend its refusal to pay commissions by claiming

26   _____

27     [2]  Ms. Frediani submitted two declarations in connection with this motion.  The first declaration
was filed in support of Plaintiff's motion for remand; the second was filed late in support of Hearst's
28   opposition.  As the Court noted at the hearing, the declarations conflicted.  The Court ordered the parties
to make Ms. Frediani available at the hearing, but her attorney was unable to appear on such short
notice.

6

United States District Court
For the Northern District of California

1  that the Disputed Accounts were "regular" accounts (a term defined in the CBA) for which Smith

2  was not entitled to any commissions.

3       Determining whether this defense is valid will not require a state court to analyze the CBA in

4  a prohibited manner.  That a court will eventually look to Amended paragraph 9(3) of the MOU to

5  find the definition of a "regular" account versus a "new" account does not mean that the court will

6  have to interpret the CBA.  With the definition in hand, the court will only have to consult a calendar

7  and accounting records to determine whether the Disputed Accounts had placed advertisements in

8  the Chronicle for the thirteen months prior to Smith's resignation.  Smith's claims therefore are not

9  completely preempted by Section 301.  See Livadas, 512 U.S. at 124 ("[W]hen the meaning of

10  contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will

11  be consulted in the course of state-law litigation plainly does not require the claim to be

12  extinguished." (citing Lingle, 486 U.S. at 413 n.12 ("A collective-bargaining agreement may, of

13  course, contain information such as rate of pay . . . that might be helpful in determining the damages

14  to which a worker prevailing in a state-law suit is entitled.")))).

15       For example, in Ramirez, the Ninth Circuit refused to extend Section 301 preemption to

16  cases that only involved a reference to or consideration of a clause in a CBA:

17         Fox errs in equating "reference" with "interpret."  The resolution of Ramirez's action
           will not require the interpretation of the Bargaining Agreement.  The Bargaining
18         Agreement will likely be referred to by Ramirez and Fox to determine the terms and
           conditions of her employment.  But her underlying cause of action is that Fox
19         discriminated against her in applying and/or altering those terms and conditions.
           Although the inquiry may begin with the Bargaining Agreement, it certainly will not
20         end there. . . .  reference to or consideration of the terms of a collective-bargaining
           agreement is not the equivalent of interpreting the meaning of the terms. . . .
21         Although the line between reference to and interpretation of an agreement may be
           somewhat hazy, merely referring to an agreement does not threaten the goal that
22         prompted preemption – the desire for uniform interpretation of labor contract terms.

23  998 F.2d at 748-749 (citing Local 174, Teamsters v. Lucas Flour Co., 369 U.S. 95, 103-04 (1962)).

24  Similarly, in Balcorta, the Ninth Circuit explained that: "[w]e have stressed that, in the context of §

25  301 complete preemption, the term 'interpret' is defined narrowly – it means something more than

26  'consider,' 'refer to,' or 'apply.'" 208 F.3d at 1108 (quoting Associated Builders & Contractors, Inc.

27  v. Local 302 Int'l Bhd. of Elec. Workers, 109 F.3d 1353, 1357 (9th Cir. 1997)).  The court

28  accordingly affirmed the denial of summary judgment on preemption grounds, holding that it was

United States District Court

For the Northern District of California

1  not necessary to interpret the terms of the CBA to decide what constituted a "discharge" or "timely

2  payment of wages" for purposes of plaintiff's claim:

> Although the provisions [of the CBA] do detail fairly complicated procedures and contain a hefty dose of industry jargon, their meaning is neither uncertain nor ambiguous.  A court may be required to read and apply these provisions in order to determine whether an employee was discharged from his "call" at the end of his shift, but no interpretation of the provisions would be necessary. . . .  We have difficulty understanding why Fox thinks this straightforward language requires interpretation....

7  Balcorta, 208 F.3d at 1109-10.  The CBA terms that Hearst will rely on to defend against Smith's

8  claims will be those defining "regular" accounts and "new" accounts.  See Notice of Removal, Ex. C

9  (MOU) at 7.  These unambiguous provisions use similarly "straightforward language" that does  not

10  require interpretation.

11    Finally, because the Court has determined that Smith is suing to enforce non-negotiable state

12  rights, which do not trigger Section 301 preemption, the Court need not reach Plaintiff's alternate

13  argument based on Price v. Georgia-Pacific Corp., 99 F. Supp. 2d 1162 (N.D. Cal. 2000).

14    C.    Motion for Attorney's Fees.

15    Absent unusual circumstances, court usually award attorneys' fees under 28 U.S.C. section

16  1447(c) only if the removing party "lacked an objectively reasonable basis for seeking removal."

17  Martin v. Franklin Capital Corp., 126 S. Ct. 704, 711 (2005).  As the Ninth Circuit has stated,

18  "[l]abor preemption is a complex and confused area of the law." Olguin, 740 F.2d at 1473.  Hearst

19  removed the case based on the "objectively reasonable basis" that Smith's claims were completely

20  preempted, and the Court does not find any "unusual circumstances" that warrant fee shifting.

21  **IV.    CONCLUSION**

22    For the reasons stated above, pursuant to 28 U.S.C. § 1447(c), the Court remands the case to

23  the Superior Court and denies Smith's motion for attorneys' fees.

24

25    **IT IS SO ORDERED.**

26

27  Dated: April 13, 2006

28  ELIZABETH D. LAPORTE
United States Magistrate Judge